# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**RICHARD R. LAASIRI,**

      **Plaintiff,**

      v.

                                        **Case No.    04-C-727**

**JO ANNE B. BARNHART,**

      **Defendant.**

## DECISION AND ORDER

The plaintiff Richard R. Laasiri ("Laasiri") suffered a workplace accident, herniating his L5-S1 disk in October of 1998. Although he underwent L5-S1 spinal fusion in June of 2000, Laasiri claims that his back pain continues unabated. On September 17, 2001, he filed an application for Disability Insurance Benefits (DIB), claiming a total disability onset date of March 1, 2001. (Tr. 35.) That application was denied initially, upon reconsideration, and, ultimately, by an Administrative Law Judge (ALJ) by decision dated February 26, 2004. On July 28, 2004, Laasiri filed a civil action in this Court seeking review of the final decision of the defendant Commissioner of Social Security ("the Commissioner") that Laasiri is not disabled and not entitled to DIB.

In his "Plaintiff's Brief," Laasiri identifies three intertwined errors, which he believes warrant reversal of the Commissioner's decision. First, Laasiri contends that "[t]he substantial evidence in the record does not support the Administrative Law Judge's finding that Plaintiff was not disabled, because he retained the residual functional capacity to perform a significant number of jobs despite his impairments." (Pl.'s Br. 3.) Second, the ALJ abused her discretion by rejecting Laasiri's testimony about his physical limitations. (*Id.*) And, third, the Judge's failure to accept Laasiri's testimony about his physical limitations constituted an error of law. (*Id.*) The Court proceeds to examine these arguments more closely.

I.  Standard

This Court's review of the Commissioner's final determination is circumscribed by 42 U.S.C. § 405(g). The Court will only reverse the Commissioner if her findings are not supported by substantial evidence or are the result of an erroneous application of the law. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). "Substantial evidence" is relevant evidence, which a reasonable mind could accept as adequate support for a conclusion. *See Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003); *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). When assessing whether evidence is substantial, the Court will consider the entire administrative record, but will not reevaluate facts, reweigh evidence or substitute its judgment for that of the agency. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). This, however, does not mean that the Court will simply rubber stamp the Commissioner's

2

decision. On the contrary, the Court will critically review the evidence and uphold the Commissioner's decision only if it supported by the record or contains an adequate discussion of relevant issues. *Id.*; *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). The ALJ's decision must build a logical bridge from the evidence before him to his conclusion. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

Though Laasiri identifies three errors for this Court to review, the bulk of his arguments focus on the ALJ's credibility determinations related to the extent of his disability. Therefore, the Court will take up that issue first.

An ALJ must consider a claimant's subjective complaints of pain "if supported by medical signs and findings." *Clifford*, 227 F.3d at 871. The Seventh Circuit has instructed that:

> If the allegation of pain is not supported by the objective medical evidence in the file and the claimant indicates that pain is a significant factor of his or her alleged inability to work, then the ALJ must obtain detailed descriptions of claimant's daily activities by directing specific inquiries about the pain and its effects to the claimant. She must investigate all avenues presented that relate to pain, including claimant's prior work record information and observations by treating physicians, examining physicians, and third parties. Factors that must be considered include the nature and intensity of claimant's pain, precipitation and aggravating factors, dosage and effectiveness of any pain medications, other treatment for the relief of pain, functional restrictions, and the claimant's daily activities.

*Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994).

3

ALJs must comply with Social Security Ruling 96-7p when making credibility determinations. That Ruling requires ALJs to make explicit the reasons underlying their assessments:

> The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered' or that "the allegations are (or are not) credible." . . . The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

1996 WL 374186, at *4 (S.S.A. July 2, 1996). Thus, an ALJ cannot simply ignore an applicant's allegations, and must make his reasoning clear. *Zurawski v. Halter*, 245 F.3d 881, 887-88 (7th Cir. 2001).[1] The ALJ, of course, need not address every shred of evidence, but he must provide a legitimate reason supporting his decision. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). This Court must be able to trace the logic connecting the evidence to the ALJ's conclusions. *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000).

---

[1] Also relevant to the present inquiry, 20 C.F.R. § 404.1529 explains how an ALJ should evaluate a claimant's symptoms. That regulation explains that statements of pain will be considered against the backdrop of the record as a whole, including the objective medical evidence. 20 C.F.R. § 404.1529(a). As a threshold inquiry, the ALJ must determine whether the claimant's "impairment(s) could reasonably be expected to produce" the claimant's alleged symptoms. 20 C.F.R. § 404.1529(b). Once this finding is made, the ALJ then considers the intensity and persistence of the claimant's symptoms in order to assess how those symptoms impact the claimant's capacity for work. 20 C.F.R. § 404.1529(c)(1). Assessing the intensity and persistence of the claimant's symptoms entails considering various factors, including objective medical evidence, daily activities, the location, duration, frequency, and intensity of the claimant's pain, precipitating and aggravating factors, medications, treatments other than medication, measures implemented to relieve the symptoms, and functional limitations due to the pain. 20 C.F.R. § 404.1529(c)(3).

Finally, after the ALJ has assessed the intensity and persistence of a claimant's pain, he must determine the extent to which that pain affects the claimant's ability to perform work. *See* 20 C.F.R. § 404.1529(c)(4). A claimant's symptoms, including pain, "will be determined to diminish [his] capacity for basic work activities to the extent that [his] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id*.

Though ALJs must conform to the above requirements, a court may find that complaints, which are not fully supported by the extant medical record, may prove probative of a claimant's credibility. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). Still, a disparity between the objective medical record and the claimant's subjective complaints, absent more, cannot provide a basis for a negative credibility finding. *Schmidt v. Barnhart*, 395 F.3d 737, 746-47 (7th Cir. 2005). Courts recognize that credibility determinations "often involve intangible and unarticulable elements which impress the ALJ, that, unfortunately leave no trace that can be discerned in this or any other transcript." *Edwards v. Sullivan*, 985 F.2d 334, 338 (7th Cir. 1993).

Laasiri's request for review hinges on whether the ALJ reasonably weighed his subjective claim of pain. Perhaps even more specifically, whether the Plaintiff's pain was such that he needed to lie down approximately every half hour for a period of approximately ten minutes. (*See* Pl.'s Reply Br.) Laasiri's argument is somewhat general and repetitive. He says multiple times that his subjective complaints of pain are consistent with the objective medical evidence and other information in the record. It is clear, from the ALJ's decision, that she did not think Laasiri's subjective claims of pain were consistent with the record. In fact, the ALJ stated that "to the extent that the claimant alleges an inability to perform any significant work activities on a sustained basis, his allegations and subjective complaints are found not to be fully credible when considered in light of the entirety of the evidence of record." (Tr. 17.) Laasiri argues that the ALJ only discussed the objective medical evidence

5

and that evidence, in fact, favors his claim of disability. He asserts that the ALJ failed to discuss any other relevant factors. (Pl.'s Br. 4.)

II.     Examination of ALJ Decision and Transcript

First, the Court examines those points explicitly made in the ALJ's decision. The ALJ identified state agency medical examiners who, in 2001 and 2002, found that the claimant retained the residual functional capacity for light work. (Tr. 18.) She cited the examination of Dr. Nalini Seghal who likewise placed Laasiri at the light work level. (*Id.*) The ALJ considered what the claimant, Laasiri, did *not* complain of: "numbness, morning stiffness, focal weakness, swelling of the joints, depression" or pain that "interfered with his memory and concentration." (*Id.*) The ALJ, in her decision, noted Laasiri's various treatments, including "nonsteroidal anti-inflammatory medication, muscle relaxant medication, narcotic pain medication and epidural injections." (*Id.*) These treatments, she continued, produced no side effects according to Laasiri. (*Id.*) The ALJ observed that Laasiri had not participated in any physical therapy, but claimed to have recently commenced participation in a pain management program. (*Id.*)

The ALJ acknowledged the opinion of Dr. M. Qasim Kahn ("Dr. Khan"), declaring Laasiri unable to perform his regular job. (*Id.*) Likewise, she noted the opinion of Dr. Rakhshinda Almas ("Dr. Almas") that Laasiri's pain prohibited him from performing work. (*Id.*) The ALJ points to the "[s]ummary office notes" of Dr. Kahn and Dr. Almas as partially supporting "the conclusion that the record as a whole does not show that the pain was severe

6

enough, or had spread sufficiently to prevent claimant from performing light work." The ALJ has not identified those particular parts of those reports that support this finding.

Another portion of the ALJ's decision that speaks to issues of credibility and subjective pain is found on page 18 of the Transcript. The ALJ stated:

> Although the claimant has described daily activities which are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the medical evidence and other factors discussed in this decision. Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.

(*Id.* at 18.)

In her decision, the ALJ provides citations to the record to support her conclusions. While the Court has reviewed the entire record, it pays special attention to those portions cited by the ALJ, "Exhibits B1F-B5F and B7F-10F," covering pages 74 to 101, and 110 to 156 of the record, and "Exhibit B6F," covering pages 102 to 109. The Court proceeds to summarize the contents of these exhibits.

A functional capacity evaluation conducted in November 2000, see Transcript 74-75 or 149-150, recommended that Laasiri could undertake light physical demand level work with certain restrictions. That same evaluation, however, indicated that, over a testing span of two and one-half hours, Laasiri required "2-3 breaks to lie on his back to relieve" back pressure. (*Id.* at 75.) The evaluator opined that Laasiri "appeared to put forth his maximal

7

voluntary effort within his perceived pain level of 6-7 out of 10, which is his average reported pain level." (*Id.*)

A June 25, 2001 treatment note from the Midwest Spinal Center states that Laasiri, during a routine three-month follow-up, indicated that he was experiencing slightly more back pain as a result of increased exercise. (*Id.* at 87.) A September 10, 2001 note, also from the Spinal Center, indicates Laasiri's complaints of "increasing groin pain and anterior abdominal wall pain." (*Id.* at 86.) The documenting physician, James E. Stoll, M.D., stated that Laasiri was not currently taking pain medication and "at this point I [Dr. Stoll] think that the situation [lumbar spine fusion] is primarily resolved."[2] (*Id.*) The ALJ was probably referencing this note when she stated that "[c]laimant reported to the doctor in September 2001 that he was not taking any pain medications." (*Id.* at 18.)

Also on September 10, 2001, a radiological test was performed. The physician interpreting the results of that test found no significant changes since a prior examination after Laasiri underwent the fusion procedure. (*Id.* at 91.)

One day after seeing Dr. Stoll on September 10, 2001, Laasiri was examined by Dr. Khan. (*Id.* at 100-01.) Laasiri told Dr. Khan that his back pain became worse a "few days ago." (*Id.* at 100.) During that examination, Laasiri's back pain was described as "constant, non radiating" and increasing "with bending and on standing." (*Id.*) Laasiri rated his pain as a "6" on a scale of 10. (*Id.*) Dr. Khan found no visible deformity on Laasiri's back,

---

[2]The Defendant erroneously attributes this statement to Dr. Khan. (*See* Mem. in Supp. of the Commissioner's Decision 7.)

8

though there was some tenderness and restricted movement due to pain. (*Id.* at 101.) Also on September 11, 2001, Dr. Khan opined that Laasiri could not perform his regular work duties for at least twelve months. (*Id.* at 99.) Another examination by Dr. Khan, on September 27, 2001, revealed some improvement in Laasiri's pain, though it is not clear if this improvement was limited to his claims of abdominal pain. (*Id.* at 98.)

After examination on October 15, 2001, Dr. Khan wrote that "[p]atient states that his symptoms are relatively well controlled on current medications." (*Id.* at 97.) Laasiri was not reporting any new symptoms. (*Id.*) Dr. Khan also noted that Laasiri was "functional on current medications." (*Id.*) There is a "Musculoskeletal Questionnaire" completed by Dr. Kahn, dated December 11, 2001, which states that, for treatment for his lower back pain, Laasiri had received "pain meds and muscle relaxation." (*Id.* at 77.) That same note indicates improvement by Laasiri: "50% improvement but now has pleateaued." (*Id.*)

Dr. Khan's notes for examinations conducted on November 29, 2001 and January 28, 2002 are virtually identical. Both describe Laasiri's back pain as a "6" on a scale of 10, with discomfort increasing on standing and walking. (*Id.* at 95, 96.) During a February 5, 2002 examination, Laasiri stated that his pain had increased to an "8." (*Id.* at 94.) He stated that the pain became exacerbated on "standing, physical activity and of [sic] lying down." (*Id.*) Laasiri claimed he was having difficulty sleeping and was significantly limited in his daily activities. (*Id.*) Dr. Khan's examination did not reveal any physical changes in Laasiri's

9

condition, but Dr. Khan stated that Laasiri "appeared to be in pain" and his "strong pain" medications were not providing significant relief. (*Id.*)

A February 25, 2002 note from Dr. Stoll of the Midwest Spinal Center states that Laasiri's back and left leg pain was increasing. (*Id.* at 85.) At that time, Dr. Stoll wrote: "Tension signs are positive. No focal neurologic deficit." (*Id.*) A radiological test, performed on February 26, 2002, revealed no herniated disc or stenosis. (*Id.* at 90.) The final note in the Transcript from Dr. Stoll, dated March 6, 2002, indicates continued complaints of pain by Laasiri, but, objectively, "no evidence of posterior annular abnormalities or evidence of movement"–presumably in reference to the fusion procedure. (*Id.* at 84.) A March 8, 2002 electromyography study provided evidence of "a mild left L5 radiculitis." (*Id.* at 81.)

On April 4, 2002, Dr. Khan authored a note opining that Laasiri could not perform his regular job given his level of pain. (*Id.* at 93.)

The ALJ's decision references residual functional capacity examinations performed in 2001 and 2002. The list of exhibits to the record identifies two sets of residual functional capacity notes, one containing two dates–May 9, 2002 and December 20, 2001, and covering pages 102-109 of the Transcript, and one dated November 29, 2002, covering pages 149 to 150 of the Transcript. The first examination does not discuss Laasiri's level of pain at all, though the examination record does evince Laasiri's ability to do light work. The second

10

examination, while declaring Laasiri's eligibility for light work acknowledged Laasiri's need to break during the examination to rest his back.

Transcript pages 110 to 156, apart from documentation of Laasiri's subjective complaints, largely consist of a "Physical Work Performance Evaluation Summary" compiled by Susan McGaughey, OT, and dated November 5, 2002. (*See* Tr. 113-140.) McGaughey concluded that Laasiri was "capable of performing physical work at the Light level . . . ." (*Id.* at 113.) The summary suggests that Laasiri exhibited self-limiting behavior beyond those imposed by any physical limitations. (*Id.*) While recommending light work, McGaughey noted that Laasiri "took numerous breaks through the testing, lying and sitting." (*Id.* at 114.)

In a letter dated May 23, 2003, Dr. Almas–apparently an associate of Dr. Khan's– indicated that Laasiri was not able to work given his degree of pain. (*Id.* at 148.) That letter identified Laasiri's current medications including muscle relaxants, Celebrex and Vicodin. (*Id.*)

Dr. Nalini Seghal, a pain specialist, conducted an evaluation to resolve whether spinal cord stimulation was appropriate or necessary. (*Id.* at 142.) Dr. Seghal's report is dated August 7, 2003. In Dr. Seghal's description of Laasiri's symptoms, he notes that Laasiri states he "is not able to do any of his household chores such as vacuuming, washing, or groceries" though he is able to dress and bathe himself. (*Id.* at 143.) Dr. Seghal listed treatments including taking pain medications, physical therapy, and injections. (*Id.* at 144.)

11

Transcript pages 151 to 156 are comprised of outpatient reports by Dr. Kenneth Chiou dated October 11, 2003, April 18, 2003, and September 23, 2003, respectively. Commenting on the efficacy of two trials of lumbar facet joint injection, Dr. Chiou noted, on October 11, 2003, that Laasiri claimed the injections provided relief, albeit for a short duration. (*Id.* at 151.) Dr. Chiou continued:

> The patient states supine resting position, laying flat on the back or laying flat on the stomach, will make the pain better. Otherwise, any prolonged standing and sitting will make the pain worse. Pain is almost constant, with a variable intensity. Seems to get better with taking medication and resting, and seems to get worse as the day goes with increased activity.

(*Id.* at 151.)

III.    Analysis

The Court now more closely examines those factors considered by the ALJ. Having reviewed the record, it is clear that the ALJ found a disparity between Laasiri's claimed pain and the record as a whole. That is, the ALJ did not think that Laasiri's physical condition could reasonably be expected to produce the level of discomfort and restriction he claimed. *See* 20 C.F.R. § 404.1529(b). The ALJ pointed to the residual functional assessment, dated December 20, 2001 and May 9, 2002, which found that Laasiri could perform light work. (*See* Tr. 17-18, 102-109.) Thus, the ALJ satisfied the requirement of considering Laasiri's functional restrictions. *See Clifford*, 227 F.3d at 871; 20 C.F.R. § 404.1529(c)(3).

The ALJ also points to the functional capacity assessment of Dr. Seghal "in November 2000" that "placed the claimant at the light level." (Tr. 18.) The ALJ states that this

12

assessment is located in the record as Exhibit 8F. Even though the list of Exhibits in the Transcript identifies Exhibit 8F or B8F as "St. Francis Work Hardening Functional Capacity Evaluation, dated 11/29/00," the actual exhibit is electronically signed for August 17, 2003. Furthermore, Dr. Seghal, at the outset of that exhibit, identifies the disputed issue as the "need for spinal cord stimulation trial . . . ." (*Id.* at 142.) Dr. Seghal identifies the examination as being undertaken pursuant to Wisconsin Statute § 102.13(3). (*Id.*) While section 102.13(3) can be invoked for examinations to determine the extent of an employee's disability, it also provides for exams to assess "the necessity for further treatment or for a particular type of treatment." Wis. Stat. § 102.13. Thus, this examination does *not* appear to be a typical functional capacity evaluation. Rather, the examination was performed to assess the possible merits of spinal cord stimulation. The Court finds no support in this exhibit for the ALJ's statement that Dr. Seghal found Laasiri capable of performing work at the light level.

The ALJ received, and considered, evidence about Laasiri's daily activities and the testimony of a third-party, his spouse. *See Clifford*, 227 F.3d at 871; 20 C.F.R. § 404.1529(c)(3). The ALJ's reasons for discounting Laasiri's testimony regarding limited daily activities are unclear. (*See* Tr. 18.) Saying that activities cannot be objectively verified is an indirect way of denying a witness's credibility. And, once again, the ALJ suggested that Laasiri's limitations were not grounded in the evidence of the record. The Court cannot determine what activities Laasiri undertook when he watched his children. The ALJ seemed

13

to think this activity, and whatever it entailed, suggested that Laasiri's pain was not as severe as he claimed. Perhaps the ALJ is correct and Laasiri engaged in activity while watching his children. Or, perhaps, he simply sat in a chair or laid on the floor, consistent with his claimed symptoms. The ALJ did not elicit the specific activities undertaken by Laasiri when he watched his children. Presumably, she concluded that caring for a child under two years of age requires some degree of physical exertion.

The ALJ's decision does suggest that it would be unusual for Laasiri to experience such severe symptoms given his diagnosis. This position is drawn from an examination of a similar condition listed in the Listing of Impairments. (*See id.*) The ALJ listed the various conditions or symptoms of which Laasiri did *not* complain. This arguably bolsters the ALJ's credibility finding.

The ALJ also examined the medications, treatments, and their effects on Laasiri. *See* 20 C.F.R. § 404.1529(c)(3); *Clifford*, 227 F.3d at 871, noting: "Additionally, the claimant's treatment for relief of his chronic pain complaints has consisted of nonsteroidal anti-inflammatory medication, muscle relaxant medication, narcotic pain medication and epidural injections. As to side effects, claimant reported none." (Tr. 18.) Though addressing a required factor in the subjective pain analysis, the ALJ did not identify the weight attributed to these treatments. For example, how did the ALJ weigh Laasiri's treatment with epidural injections and narcotic pain medication? Did these medications and treatments support or undermine Laasiri's subjective complaints of pain? At the very least, it is clear that the ALJ

14

found both the positive effects of the treatments/medications and the absence of harmful side effects to diminish Laasiri's claim of subjective pain preventing him from work activity.

Other treatments cited by the ALJ support her finding that Laasiri's claims of pain were not entirely credible. The Transcript, except for a claim of possible radiculitis, *see* Transcript 81, suggests that Laasiri's back fusion resolved the problem initially related to his work accident. (*See, e.g.*, *id.* at 86.) As late as September 2001, Laasiri was not taking medication for his pain, and, in October of that same year, Dr. Khan stated that Laasiri was "functional on current medications." (*Id.* at 97.) In December of 2001, improvement was noted in Laasiri's condition. (*Id.* at 77.) The ALJ further noted Laasiri's assertion that he was starting a pain management program, though no program or progress notes were proffered.

It is true that the record shows claims of increased pain over time by Laasiri. (*See, e.g.*, Tr. 94.) However, during the period when Laasiri claimed to be experiencing increased pain, an occupational therapist raised the possibility that certain of Laasiri's limitations were self-imposed. (*Id.* at 113.)

Laasiri, in his reply brief, claims that the ALJ did not give proper consideration to his "need to frequently lie down throughout the day." (Pl.'s Reply Br. 2.) Laasiri is correct insofar as the ALJ's opinion does not explicitly address this factor. The question arises whether the ALJ's consideration of Laasiri's subjective complaints of pain encompass Laasiri's need to take period breaks and lie down. In other words, the ALJ considered the

15

reason–i.e., pain and pressure–for Laasiri needing to take periodic breaks without explicitly referencing the impact of those claimed breaks on her analysis. Perhaps, the ALJ felt that, having found Laasiri's claims of pain only partially substantiated, it was unnecessary to address those claimed restrictions. Implicit in the ALJ's opinion, based on this interpretation, is the opinion that Laasiri did not need to take such breaks because his pain was not as severe as he claimed. This possibility is consistent with her finding that he was able to perform light work. Without expressing agreement or disagreement with this opinion, the Court finds that the ALJ's decision is not reversible simply because her opinion does not explicitly reference Laasiri's purported requirement for breaks to ease the pain in his back.

The Court concludes that the ALJ addressed those factors required by relevant regulations and case law. Even given the ALJ's failure to clearly articulate her reasoning and methodology in weighing certain evidence and her failure to probe more specifically during the hearing into Laasiri's daily activities, the Court finds that substantial evidence supports her decision. The ALJ clearly considered certain parts of the record as casting Laasiri's claims of pain into doubt, including at least one of the residual functional capacity exams, the lack of objective medical documentation suggesting a source for Laasiri's pain, his failure to submit evidence of physical therapy, the information during the hearing related to his daily activities, medical opinions suggesting that his physical situation had resolved itself, the possibility that certain of his limitations were self-imposed, and Laasiri's prior ability to be functional on medication or without medication altogether. The ALJ also clearly weighed

16

countervailing evidence such as physician statements that Laasiri could not return to his previous employment or engage in any work at all.

This Court's standard of review of the ALJ's decision is a "generous" one, see *Steele*, 290 F.3d at 940, and credibility determinations are entitled to special deference, see *Powers*, 207 F.3d at 435. In fact, credibility determinations will only be reversed if "patently wrong." *Id.* (citing *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). Even if the Court disregarded those parts of the record that the ALJ erroneously thought supported an adverse credibility finding, a reasonable person could still find that Laasiri's claims of subjective pain were not fully credible based on the remaining factors discussed in the ALJ's decision. Whether this Court agrees with the ALJ's assessment is not germane; the applicable standard of review only inquires whether the ALJ has provided substantial evidence supporting her conclusion. *See Lopez*, 336 F.3d at 539.

Laasiri is mistaken in his belief that the ALJ must make an express credibility determination explaining why his complaints of pain were not accepted in their entirety. (Pl.'s Br. at 5.) This proposition is supported by a citation to an Eighth Circuit case. However, in the Seventh Circuit, "where the reasoning of the ALJ's decision is apparent, we do not require the ALJ to articulate explicitly his credibility determinations." *Abrogast v. Bowen*, 860 F.2d 1400, 1406 (7th Cir. 1988). This Court understands why the ALJ discredited, to some degree, Laasiri's subjective complaints of pain. There is substantial support for that conclusion in the record.

Laasiri also complains that the ALJ did not pose the proper hypothetical to the vocational expert. However, this claim is perplexing insofar as Laasiri's attorney did pose a question related to those jobs available to a worker who needed to recline to relieve pain at least once every half hour for ten to fifteen minutes. At any rate, that limitation claimed by Laasiri is largely a product of his alleged pain, which the ALJ ultimately did not fully accept. Thus, even though the ALJ did not pose the hypothetical herself, the vocational expert did consider the scenario at the request of Laasiri's attorney. And, the ALJ's failure to pose that hypothetical limitation does not undermine her decision because she did not fully accept Laasiri's claimed pain or his need to take periodic breaks.

18

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

The final decision of the Commissioner of Social Security denying Richard R. Laasiri's application for disability insurance benefits filed on September 17, 2001 is **AFFIRMED** and this action is **DISMISSED**.

The Clerk of Court **SHALL** enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 22nd day of March, 2006.

                                        **BY THE COURT**

                                        s/ Rudolph T. Randa
                                        **Hon. Rudolph T. Randa**
                                        **Chief Judge**